UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE: ROPER BROTHERS LUMBER     Case No. 09-38215-KRH
       COMPANY, INCORPORATED,     Chapter 11
                         Debtor.
EIN: 54-0363050

## DECLARATION OF JOHN KAUZLARICH
## IN SUPPORT OF CHAPTER 11 PETITION AND "FIRST DAY" MOTIONS

I, John Kauzlarich, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am authorized to submit this Declaration in support of the chapter 11 petition and the "first day" motions described herein that were or will be filed by Roper Brothers Lumber Company, Inc. (the "Debtor" or the "Company").

2. As the former CFO and Executive Vice-President of the Debtor, I am familiar with the Debtor's day-to-day operations, business affairs, and books and records. I have also reviewed the Debtor's "First Day Motions and Orders" and am familiar with the facts alleged therein and relief requested. I have personal knowledge of the facts, circumstances an other matters set forth in the First Day Motions and Orders and in this Declaration or have gained knowledge of such matters from the Company's officers, employees, and professional advisors. If called as a witness, I would testify thereto and as follows:

**A.    Introduction**

3. On December 16, 2009 (the "Petition Date"), the Debtor commenced a bankruptcy case by voluntarily filing a petition for relief in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Proposed Counsel for Debtor

4. Founded in 1909, the Company was primarily engaged in the business of selling lumber and related building materials to home builders and commercial contractors located throughout Virginia and North Carolina.

5. The Company is headquartered in Petersburg, Virginia, and has inventory stored at five locations: Fredericksburg, Lynchburg, Petersburg, Williamsburg (Toano), and Winchester, Virginia.

6. During the early part of the last decade, the Company grew rapidly and took on substantial debt. Unfortunately, the recent downturn of the real estate market caused significant declines in revenue. For example, net sales for fiscal year-ending September 30, 2007, 2008, and 2009 were $139 million, $99 million, and $53 million, respectively. Faced with mounting losses, the Company made the difficult decision to close its doors and liquidate the business.

**B.     The Chapter 11 Case**

7. When operations ceased on December 11, 2009, the Company employed approximately 150 people. Except for 24 people deemed necessary for an orderly liquidation of the Company's assets, all employee services were terminated on December 11, 2009. The Company commenced this chapter 11 case on December 16, 2009 to promptly and efficiently liquidate the Company.

8. As of the Petition Date, the Company had assets and liabilities of approximately $14.3 million and approximately $16 million, respectively. Of this amount, assets were comprised of approximately $5 million in accounts receivable, approximately $3.3 million in inventory, $3 million in fixed assets, and $3 million in other assets (including real property in the Lake Margaret Subdivision located in Chesterfield County, Virginia).[1] The company has no cash, as under the Company's cash management system, all deposits were applied against a

---

[1] Asset amounts are at book value, rather than liquidation value.

revolving line of credit with Wells Fargo Bank, N.A., and disbursements were funded by draws against that revolving line of credit.

**C.     Debt Structure**

9.      The Company has a revolving line of credit agreement with Wells Fargo Bank, N.A.  The line is collateralized by substantially all assets of the Company and the personal guarantee of the stockholder.  As of the Petition Date, the outstanding balance was approximately $3.5 million.

10.     The Company has a line of credit issued by Franklin Federal Savings.  The line is secured by real property in the Lake Margaret Subdivision.  As of the Petition Date, the outstanding balance was approximately $2 million.

11.     The Company has a note payable due to a director, which is collateralized by certain assets of the Company.  As of the Petition Date, the outstanding balance was approximately $2 million.

12.     As of the Petition Date, the company had unsecured liabilities of approximately $8.5 million (excluding liquidation costs and damages).

**MOTIONS AND ORDERS**

13.     The Company is filing concurrently herewith a number of first day motions (the "First Day Motions") and proposed orders (the "Proposed Orders"), each listed on the attached Exhibit A, and respectfully requests that the Court consider entering the Proposed Orders and/or granting the relief sought in such First Day Motions.  I conclude that the relief sought in each of the First Day Motions and Proposed Orders (a) is necessary to avoid immediate and irreparable harm; (b) constitutes a critical element in the Debtor's liquidation; and (c) ensures that the

Company complies with applicable non-bankruptcy law, to the extent such law remains applicable in a chapter 11 proceeding.

**A.     Administrative Motions**

14.     The Company will file six administrative motions, as more fully set forth in items 1 through 6 on Exhibit A hereto, which (i) request an expedited hearing on December 21, 2009 to consider the relief requested in each of the Motions, (ii) request an order establishing certain notice, case management and administrative procedures, (iii) request an order authorizing preparation of a list of creditors in lieu of submitting a formatted mailing matrix, (iv) request an extension of time for the filing of the Company's schedules and its statement of financial affairs, (v) request a waiver of the requirements of Bankruptcy Code section 342(c) and Bankruptcy Rules 1005 and 2002(n), and (vi) request approval of agreement with Kurtzman Carson Consultants LLC and appointing them as claims, noticing and balloting agent.

**B.     Motion to Authorize Payment of Employee Obligations**

15.     The Company will file a motion, as set forth in item 7 on Exhibit A hereto, seeking authority to (a) pay prepetition wages, salaries, reimbursements and other compensation (totaling approximately $16,149.00) and (b) pay prepetition payroll deductions, withholdings and garnishments (totaling approximately $18,000.00).

16.     The debtor believes that payment of the prepetition accrued compensation for the twenty-four employees retained to assist in the liquidation of the business is necessary to guaranty their retention.  The Debtor submits that this Motion should be granted as any delay in paying the prepetition obligations will severely disrupt the Debtor's relationship with its employees and irreparably impair their morale, at a time when their dedication, confidence and cooperation are most critical.  If the relief requested herein were not granted, many of the

employees would suffer financial difficulties as these monies are needed to enable them to meet their own personal obligations.

**C.      Motions to Authorize Payment of Other Critical Business Expenditures**

17.     <u>Taxes.</u>  The Company will file a motion, as set forth in item 8 on Exhibit A hereto, seeking authority to make critical business expenditures on account of sales, use, trust fund and other taxes.  In the ordinary course of business, the Company incurs various taxes, including state and local taxes (the "Taxes").  Prior to the Petition Date, the Company was, for the most part, current on its obligations with respect to these Taxes.

18.     <u>Insurance.</u>  The Company will file a motion, as set forth in item 9 on Exhibit A hereto, seeking authority to maintain various Insurance Policies.  Maintenance of insurance coverage under the various Insurance Policies is essential to the liquidation of the Company's business and is required under the United States Trustee's Operating Guidelines for Chapter 11 Cases and state laws.

**D.      Motion to Authorize Rejection of Certain Executory Contracts**

19.     The Company will file a motion, as set forth in item 10 on Exhibit A hereto, seeking authority to reject certain executory contracts.  Rejection of the executory contracts with Penske Truck Leasing Co., L.P. (for delivery vehicles) and VBS Inc. Material Handling Equipment (for forklifts with Hyster Capital) will discontinue the Company's obligation to the counterparties and save the Company's bankruptcy estate considerable costs.

**E.      Motion to Authorize Debtor to Sell Property of the Estate**

20.     The Company will file a motion, as set forth in item 11 on Exhibit A hereto, seeking authority to sell certain property of the estate, specifically inventory, out of the ordinary course of business, free and clear of all liens, claims, encumbrances and interests, with such

liens, claims, encumbrances and interests to attach to the proceeds of such sale. In order to obtain the highest and best offers and sales values for its inventory, it is essential that the Debtor be able to begin to negotiate and finalize sales as soon as possible. In addition, immediate authority to sell is necessary to enable the Debtor to meet obligations under an agreement with its secured creditor, Wells Fargo Bank, N.A., regarding inventory liquidation and use of cash collateral. If the relief requested is not granted, there will be immediate and irreparable harm to the Debtor's estate.

**F.     Motions regarding Cash Management and Cash Collateral**

21.     <u>Cash Management.</u>  The Company will file a motion, as set forth in item 12 on Exhibit A hereto, seeking authority to (a) maintain existing bank accounts; (b) use existing business forms; and (c) use existing cash management system.

22.     <u>Cash Collateral.</u>  The Company will file a motion, as set forth in item 13 on Exhibit A hereto, seeking interim and final orders jointly drafted with Wells Fargo: (a) authorizing the Debtor to utilize cash collateral pursuant to Bankruptcy Code § 363; (b) granting adequate protection pursuant to Bankruptcy Code §§ 361, 362 and 363; (c) providing other relief; and (d) scheduling a Final Hearing pursuant to Bankruptcy Rule 4001. For the reasons set forth in the Motion and below, it is essential that the Court approve this motion.

23.     The Company accordingly has decided, in the exercise of its sound business judgment, that the proposed cash management and cash collateral orders represent the most favorable opportunity under the circumstances and best addresses the Company's working capital needs. Accordingly, entry of the cash management and cash collateral orders will afford the Company valuable additional time to pursue its orderly liquidation. The Company concludes that entry into the cash management and cash collateral order is in the best interests of the

Debtor's bankruptcy estate, the Debtor's creditors and other parties' in interest. I request that the Court enter the cash management and interim cash collateral orders.

I declare under penalty of perjury that the foregoing, is true and correct to the best of my knowledge, information, and belief, with appropriate reliance on the Company's officers, employees and advisors.

Executed on December 20, 2009

/s/ John Kauzlarich
Liquidating Fiduciary

# EXHIBIT A

**A. Administrative Motions**

1. Motion of Debtor for Order Setting an Expedited Hearing on "First Day" Motions

2. Motion of Debtor for Order Establishing Certain Notice, Case Management and Administrative Procedures

3. Motion of Debtor for Order Authorizing Preparation of a List of Creditors in lieu of Submitting a Formatted Mailing Matrix

4. Motion of Debtor for Order Extending Time for Debtor to File All Bankruptcy Schedules and Statement of Financial Affairs

5. Motion of Debtor for Order Waiving Requirements of Bankruptcy Code § 342(c) and Federal Rules of Bankruptcy Procedure 1005 and 2002(n)

6. Application of Debtor for Order Approving Agreement with Kurtzman Carson Consultants LLC and Appointing as Claims, Noticing and Balloting Agent

**B. Motion to Authorize Payment of Employee Obligations**

7. Motion of Debtor for Order Authorizing Debtor to Pay Prepetition Payroll, Payroll Deductions, Withholdings and Garnishments

**C. Motions to Authorize Payment of Other Critical Business Expenditures**

8. Motion of Debtor for Order Authorizing Debtor to Pay Prepetition Sales, Use, Trust Fund, and Other Taxes and Related Obligations

9. Motion of Debtor for Order Authorizing Debtor to Maintain Insurance Policies and Pay Insurance Obligations

**D. Motion to Authorize Rejection of Certain Executory Contracts**

10. Motion of Debtor for Order Authorizing Rejection of Executory Contracts Effective as of the Petition Date

**E. Motion to Authorize Debtor to Sell Property of the Estate**

11. Motion of Debtor for Order Authorizing Debtor to Sell Property of the Estate and to Reduce Applicable Notice Periods Related Thereto

**F. Motions regarding Cash Management and Cash Collateral**

12. Motion of Debtor for Order: (A) Authorizing Maintenance of Existing Bank Accounts; (B) Authorizing Use of Existing Business Forms; and (C) Authorizing Use of Existing Cash Management System

13. Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Debtor to Utilize Cash Collateral pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection pursuant to 11 U.S.C. §§ 361, 362 and 363, (III) Providing Other Relief, and (IV) Scheduling Final Hearing pursuant to Bankruptcy Rule 4001