# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| IN RE: ROPER BROTHERS LUMBER COMPANY, INCORPORATED, ET AL.,       Debtor. | Case No. 09-38215-KRH<br>Chapter 11<br>(Jointly Administered) |

## MOTION OF DEBTORS FOR ORDER APPROVING PROCEDURES TO SELL MISCELLANEOUS ASSETS FREE AND CLEAR OF ALL INTERESTS WITHOUT FURTHER ORDER OF COURT

Roper Brothers Lumber Company, Incorporated ("Roper Brothers"), and Taylor Brothers, Incorporated ("Taylor Brothers," collectively with Roper Brothers, the "Debtors"), the debtors and debtors in possession in the above-captioned case, by counsel, hereby move this Court for entry of an order pursuant to §§ 105 and 363(f) of title 11 of the United States Code (the "Bankruptcy Code"), approving procedures by which the Debtor may sell miscellaneous property free and clear of all interests, including liens, claims and encumbrances. In support, the Debtor respectfully states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 363(b) and 363(f). Such relief is warranted pursuant to Bankruptcy Rules 2002(a)(2) and 2002(i).

Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Proposed Counsel for Debtor

## Background

3.  On December 16, 2009, Roper Brothers filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

4.  On January 13, 2010, Taylor Brothers filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

5.  At hearing held January 14, 2010, the Court granted Taylor Brothers' motion to jointly administer the cases and directed that all motions should be filed in this case.

6.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

7.  On January 4, 2010, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").

## Relief Requested

8.  By this Motion, the Debtor requests that this Court enter an order approving certain procedures by which the Debtor may sell certain miscellaneous assets subject to certain notice procedures set forth herein.

## Basis for Relief

9.  The Debtor was in the business of maintaining and selling stock and custom inventory of building materials. The Debtor's primary customers were custom home builders, but the Debtor also sold to large production builders. As part of its business operations, the Debtor maintained five (5) separate locations as well as a corporate headquarters.

10. On December 11, 2009, the Debtors ceased normal business operations and terminated all but a skeletal staff necessary to liquidate the Debtors' assets. The Debtors have retained two employees at each branch location as well as key corporate employees to facilitate

the liquidation of its assets on an expedited basis. The Debtors therefore deem any post-petition sale to be outside the ordinary course of business.

11. As a result of the downsizing and liquidation of its assets, the Debtors are currently in possession of certain excess assets, including but not limited to vehicles, office furniture, computers and other miscellaneous office equipment, material handling equipment, materials and equipment used in the Debtors' former door manufacturing and truss manufacturing operations, racking, warehouse equipment and small equipment and tools, which are no longer necessary (above is redundant therefore) for the Debtors' operations (the "Miscellaneous Assets"). The Miscellaneous Assets are been rendered unnecessary or burdensome to the Debtors' efforts to wind down its business.

12. The Debtors have been approached by various potential purchasers and believe that there are certain parties that would be interested in one item or groups of the Miscellaneous Assets, which the Debtors believe they will be able to profitably sell for the benefit of its estate and creditors. In the event the Debtors are able to negotiate sales of the Miscellaneous Assets, it is likely that any potential purchaser's offer will be conditioned on a quick sale and a process that minimizes costs and expenses. In order to liquidate the assets in the most efficient manner possible, the Debtors have determined that it is in the best interest of the estate to streamline the sale procedures for Miscellaneous Assets.

13. The Debtors also have received inquiries from parties indicating interest in purchasing all of the Miscellaneous Assets. If the Debtors receive such an offer that they believe is at a value higher than the aggregate purchase prices to various individual purchasers, they will pursue it in accordance with the procedures established in this motion.

14. Specifically, the Debtors are seeking authority to establish and implement procedures pursuant to which it may sell Miscellaneous Assets, individually, in groups, or in their entirety on an expedited basis, without incurring the delay and costs associated with the preparation, filing, service, and hearing of a motion for approval of each such sale, free and clear of all interests, including liens, claims, and encumbrances ("Interests"), with any such Interest attaching to the sale proceeds (each a "Miscellaneous Asset Sale"). Because of the types of assets involved, the short window of opportunity often available to consummate sale transactions for such assets, and the comparatively low value of the individual Miscellaneous Assets to the size of the Debtors' estates, the Debtors believe that conducting auctions and obtaining Court approval for each proposed sale transaction will, in many cases, result in costs that are disproportionate to the anticipated sale proceeds.

15. In accordance with the Miscellaneous Sale Procedures as hereinafter defined, the Debtors propose to sell the Miscellaneous Assets at the assets' orderly liquidation value as determined by net book value, appraisal, or other indications of market value (e.g., Kelly Blue Book, etc.).[1]

*I.    Miscellaneous Sale Procedures*

16. In order to strike a balance between the desire to maximize the value of the Miscellaneous Assets to the Debtors' estates and the necessity of providing parties in interest notice and an opportunity to object to transactions out of the ordinary course of business, the Debtors propose the following procedures for the sale of Miscellaneous Assets (the "Miscellaneous Sale Procedures"):

>    a)    The Debtors are authorized to (a) sell individual Miscellaneous Assets with a net book value of up to $25,000 or (b) an aggregate sale of Miscellaneous Assets with a value up to $75,000 without notice to any part or further court order; <u>provided</u>

---

[1] The Debtor currently has appraisals for a limited number of its Fixed Assets.

4

however, that within three (3) business days of the closing of such sale, the Debtors shall provide a report of such sale to counsel for the Creditors' Committee, counsel for Wells Fargo Bank, N.A., and the U.S. Trustee, which report shall identify the purchaser; the description, location, and net book value of the Miscellaneous Assets sold; and the purchase price for such assets.

b) The Debtors are authorized to (a) sell individual Miscellaneous Assets with a net book value greater than $25,000 and equal to or less than $50,000 or (b) aggregate net book value equal to or less than $150,000 at a purchase price equal to or greater than fifty percent (50%) of net book value; provided however, that within three (3) business days of the closing of such sale, the Debtors shall provide a report of such sale to counsel for the Creditors' Committee, counsel for Wells Fargo Bank, N.A., and the U.S. Trustee, which report shall identify the purchaser; the description, location, and net book value of the Miscellaneous Assets sold; and the purchase price for such assets.

c) The Debtors are authorized to (a) sell individual Miscellaneous Assets with a net book value greater than $25,000 and equal to or less than $50,000 or (b) aggregate net book value equal to or less than $150,000 at a purchase price less than fifty percent (50%) of net book value; provided, that the Debtors shall provide written notice (each a "Sale Notice") by facsimile or electronic mail, of each such proposed Miscellaneous Asset Sale to (i) counsel for the Creditors' Committee (ii) counsel for Wells Fargo Bank, N.A., and (iii) any known holder of a lien, claim, or encumbrance against the specific Miscellaneous Asset or Assets to be sold (collectively, the "Notice Parties"). The Notice Parties shall have three (3) business days (a "Notice Period") after the Sale Notice is sent to object to such Miscellaneous Asset Sale.

d) The Debtors are authorized to (a) sell individual Miscellaneous Assets with a net book value greater than $50,000 or (b) aggregate net book value greater than $150,000; provided, that the Debtors shall send a Sale Notice, by facsimile or electronic mail, of each such proposed Miscellaneous Asset Sale to the Notice Parties. The Notice Parties shall have five (5) business days (also a "Notice Period") after the Sale Notice is sent to object to such Miscellaneous Asset Sale.

e) In the event an offer is obtained for the purchase of all the Miscellaneous Assets which the Debtors determine in their business judgment to be for a value higher than the aggregate sales price of potential sales of Miscellaneous Assets to various individual purchasers, the Debtors are authorized to sell all of the Miscellaneous Assets; provided, that the Debtors shall send a Sale Notice identifying the sale as a sale of all the Miscellaneous Assets (the "Total Miscellaneous Asset Sale Notice"), by facsimile or electronic mail, to the Notice Parties and shall file and serve the Total Miscellaneous Asset Sale Notice pursuant to the Order Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 41) and to any individual purchaser(s) having outstanding offers to purchase all or a portion of the Miscellaneous Assets. The Total Miscellaneous Asset Sale Notice shall provide that any Notice Party, party in interest, or individual purchaser shall have two (2) business days from receipt of the Total Miscellaneous Asset Sale Notice to submit a higher and better offer for all of the

Miscellaneous Assets. If the Debtors received higher and better offers pursuant to the two business day notice period, they will provide notice of the amended purchase terms to The Notice Parties. The Notice Parties and any other party in interest shall have 5 business days (also a "Notice Period") after the Total Miscellaneous Asset Sale Notice is sent to object to such Miscellaneous Asset Sale.

      f)      The Sale Notice will specify (i) the Miscellaneous Asset or Assets to be sold including the description, location and net book value of the assets, (ii) the identity of the proposed purchaser (including a statement of any connection between the proposed purchaser and the Debtors), (iii) the proposed sale price, and (iv) any additional information the Debtors believe is necessary and/or relevant for the Notice Parties' consideration of the proposed sale.

      g)      If counsel to the Debtors receives no written objection prior to the expiration of the applicable Notice Period, which objection may be by electronic mail, the Debtors shall be authorized to consummate the proposed Miscellaneous Asset Sale and to take such actions as are necessary to close the sale and obtain the sale proceeds without further order of the Court.

      h)      If a Notice Party objects (the "Objecting Notice Party") to the proposed transaction within the Notice Period and the Debtors and such Objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not take any further steps to consummate the Miscellaneous Asset Sale without first obtaining the Court's approval for that specific transaction, which approval may be obtained on an expedited basis with advance notice to the Objecting Notice Party.

      i)      The Debtors may consummate a Miscellaneous Asset Sale prior to the expiration of the applicable Notice Period if the Debtors obtain each Notice Party's written consent to a Sale Notice.

      j)      The Debtors will report all Miscellaneous Asset Sales that occurred during each calendar month in the Monthly Operating Report filed for such month.

*Terms and Effects of Sale*

17.      All buyers will take assets sold by the Debtors pursuant to the Miscellaneous Sale Procedures on a "cash and carry" and "as is, where is" basis, without any representations or warranties from the Debtors as to the quality or fitness of such assets for their intended or any particular purposes. For all sales, the Debtors will accept cash, cashiers checks, and credit cards as payment for the sales. In addition, the Debtors will consider short term credit on an ad hoc basis for parties who have already approved for credit or become approved for credit pursuant to

6

the Debtors' standard credit approval process. Buyers will take title to the assets free and clear of liens, claims, encumbrances and other interests, pursuant to Bankruptcy Code § 363(f).

18. Any existing liens, claims, encumbrances and other interests will attach to the net proceeds of any sale pursuant to the Miscellaneous Sales Procedures. The proceeds of all sales of fixed assets will be placed, pursuant to the Debtors' cash management system, into an account maintained at Wells Fargo Bank, N.A. ("Wells Fargo") as part of its cash collateral.

19. The fixed assets of the Debtors are subject to the properly perfected secured interest of Wells Fargo. Wells Fargo has consented to the Debtors' proposed liquidation of its assets pursuant to the terms and conditions set forth herein. The Debtors seek the authority to sell the fixed assets out of the ordinary course of business free and clear of all liens, claim, encumbrances and interests, with such liens, claims, encumbrances and interests to attach to the proceeds of such sale pursuant to Bankruptcy Code § 363(f)(2).

**Applicable Authority**

20. Bankruptcy Code § 363(b)(1)[2] provides: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides, in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

21. Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code § 363(b)(1), if a sound business purpose exists for doing so. See, e.g., In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

---

[2] All section references herein shall be to the Bankruptcy Code unless otherwise noted.

22. A sound business purpose exists where (i) a legitimate business reason justifies the sale, (ii) adequate and reasonable notice of the sale is provided to interested parties, (iii) the sale has been proposed in good faith, and (iv) the purchase price is fair and reasonable. See In re W.A. Mallory, 214 B.R. at 836; In re WBQ P'ship, 189 B.R. at 102.

23. In this case, the Debtors submit that adequate business justification merits approval of the Miscellaneous Sale Procedures. Unless the Miscellaneous Assets are sold, the Debtors' estates will be burdened with the costs of maintaining them. Requiring court approval of each transaction for the sale of Miscellaneous Assets would be administratively burdensome to the Court and costly to the Debtors' estates, especially when viewed in the context of the relative size of the transactions. The Debtors are currently engaged in the wholesale wind down of its business operations and requiring it file a motion each time it seeks to dispose of a relatively insignificant, non-core asset would distract from its efforts to bring a swift conclusion to this bankruptcy case. The costs attendant to such formal proceedings would also reduce whatever value might be realized from assets that otherwise serve no useful purpose. The Debtors are seeking the Court's authority to sell the Miscellaneous Assets to yield the highest possible return for creditors.

24. Further, the proposed Miscellaneous Sale Procedures will permit the Debtors to be responsive to the needs of purchasers, there by guarding against lost sales due to delay, while still providing for a review of proposed transactions by the Creditors' Committee.

25. In the event the Court determines there is a sound business justification for the transaction, the Court may, pursuant to Bankruptcy Code § 363(f), authorize the sales of the assets free and clear of any interest in such property if, *inter alia*, such entity consents. 11 U.S.C. § 363(f)(2).

26. The Debtors believe that the notice requirements Bankruptcy Code §§ 363(b)(1) and 363(f), and Bankruptcy Rule 2002 are satisfied by the Miscellaneous Sale Procedures. If a holder of a lien or encumbrance receives requisite notice and does not object within the Notice Period, such holder will be deemed to have consented to the proposed sale and the property then may be sold free and clear of such holder's liens or other encumbrances, with such liens and encumbrances to attach to the cash proceeds of the sale in the order of their priority, with the same validity, force, and effect which they had as against the Miscellaneous Assets immediately before such transfer, subject to any claims and defenses the Debtors may possess with respect thereto.

27. The Notice Parties represent the key parties in interest who should receive notice of any proposed sale of Miscellaneous Asset in light of (a) their duties relating to the Debtors' chapter 11 cases (the U.S. Trustee and the Creditors' Committee) and (b) their interest in the assets at issue (Wells Fargo and any other lienholder). The shortened notice provisions of the Miscellaneous Sale Procedures will make the transaction consummation process and efficient as possible, while preserving fully the rights of the Notice Parties.

## Notice

28. Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 41). The Debtor submits that, under the circumstances, no other or further notice need be given.

## Waiver of Memorandum of Law

29. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the

Debtor requests that the requirement that all motions be accompanied by a separate written memorandum of law be waived.

## **No Prior Request**

30. No previous request for the relief sought in this Motion has been made to this Court or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order (i) approving the Miscellaneous Sale Procedures; (ii) authorizing the Debtors to sell the Miscellaneous Assets free and clear of any liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the cash proceeds of the sale in the order of their priority; and (ii) granting such other and further relief as may be just and proper.

Dated: January 17, 2010                                    DURRETTEBRADSHAW PLC

 /s/ Elizabeth L. Gunn
Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Proposed Counsel for Debtor